T.C. Summary Opinion 2011-107


UNITED STATES TAX COURT


JIAN DONG SUN AND MING-YAN SHEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15044-10S.              Filed August 31, 2011.


Edward M. McElroy, for petitioners.

Donald D. Priver, for respondent.


JACOBS, Judge:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Pursuant to section 7463(b), the
decision to be entered is not reviewable by any other court, and
this opinion shall not be treated as precedent for any other
case.  Unless otherwise indicated, all section references are to

the Internal Revenue Code in effect for 2007, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $4,757 in petitioners' 2007 Federal income tax and a section 6662(a) accuracy-related penalty of $951.40. The issues for decision are: (1) Whether respondent's disallowance of deductions for various alleged business expenses should be sustained, and if so (2) whether petitioners are liable for the section 6662(a) accuracy-related penalty.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and the accompanying exhibits. At the time they filed their petition, petitioners resided in northern California.

## I. Petitioners' Business

Petitioners, husband and wife, emigrated to the United States from China in the early 1990s. Jian Dong Sun (Mr. Sun) graduated from medical school in China and practiced medicine there as a surgeon for 15 years.

During 2007 Mr. Sun was employed part time as a dialysis technician at Satellite Dialysis Center. He began working there in 1994. He also worked part time in 2007 at El Camino Hospital. During 2007 Ming Yan Shen (Ms. Shen) worked for Stanford University Medical School as well as Kaiser Permanente.

Through his employment as a dialysis technician, Mr. Sun became aware of a number of shortcomings in both the equipment and techniques used in kidney dialysis. Mr. Sun devised four inventions.

The first of the inventions, a "Roller bed surface", was a "medical bed" designed to reduce the likelihood of the patients developing bedsores as well as to enable the user to move easily from the bed to a wheelchair and back again. In 2003 Mr. Sun attempted to patent this device, but his application was denied because (1) a similar device already existed and (2) his patent application was not in the proper form.

Mr. Sun's second invention was an "Emergency Disengagement Device for Patients Undergoing Hemodialysis" or a "cut-and-run" device. This device permitted the user to quickly and safely disconnect himself/herself from the dialysis machine in case of emergency. On June 24, 2006, Mr. Sun submitted a patent application for this device. On April 23, 2009, the patent office rejected Mr. Sun's application request, again on the grounds that his patent submission was not in proper form and another party had previously patented a similar device. In the rejection letter the patent office noted Mr. Sun's lack of familiarity with patent application procedures and remarked that he should seek the services of a registered patent attorney.

Mr. Sun's third invention was an "Apparatus to Assist with Disconnecting Dialysate Tubing". This device was designed to

ease the connecting and disconnecting of the dialysis tubes. The patent office rejected this patent application.

Mr. Sun's fourth invention involved a "Baggage claim assistance device" designed to assist individuals in wheelchairs in removing their luggage from airport luggage carousels. This device currently is in the development stage.

Mr Sun organized Sun Pioneer in 2001 to further his interest in developing devices that could be used in kidney dialysis. Ms. Shen worked part time for Sun Pioneer, often acting as Mr. Sun's interpreter or speaking with others on his behalf.

Mr. Sun obtained a business license for Sun Pioneer. He opened a checking account for the company and applied for an employer identification number from the Internal Revenue Service. However, because of his lack of knowledge of bringing products to market and his lack of knowledge of good business practices, Mr. Sun did not initially develop a business plan or keep adequate business records.

To improve his entrepreneurial skills, Mr. Sun attended classes taught by the Small Business Administration and the Silicon Valley Small Business Development Center. He read literature and sought the assistance of Adrian Pelkus, the president of A Squared Technologies, Inc., with respect to obtaining a U.S. patent for his medical inventions. Additionally, Mr. Sun sought advice with respect to certain

technical aspects of his medical device inventions from Nengli Zhang of NASA and Dr. Cindy Xin Huang of Tufts Medical Center.

Mr. Sun sought legal advice from an unnamed U.S. patent attorney. He did not engage the services of that attorney for economic reasons. Mr. Sun did, however, engage the services of an attorney to obtain a patent in China.[1]

In connection with each of his inventions, Mr. Sun drafted diagrams and explanatory notes (all in Chinese) with regard to the device's design, construction, and functionality. With regard to several of his inventions, Mr. Sun had prototypes built in China, and he partnered with an undisclosed individual to facilitate arrangements with Chinese contract manufacturers. Mr. Sun's relationships with his Chinese partner and contract manufacturers were informal; there were no written contracts.

Mr. Sun conducted market research for each of his inventions. He approached medical equipment distributors, such as Baxter Healthcare, Dialysis Parts and Supplies, and DaVita, Inc., as well as potential consumers (doctors and hospitals), to discuss their interest in his inventions. In 2010 Mr. Sun stopped working as a dialysis technician in order to focus exclusively on his inventive interests.

Mr. Sun's inventive activities have not as yet generated gross receipts. Petitioners reported losses, all of which relate

---

[1]The Chinese patent was obtained in Mr. Sun's brother's name.

to Mr. Sun's inventive activities, on Schedule C, Profit or Loss

From Business, of their Federal income tax returns as follows:

| Year | Net Loss |
|------|----------|
| 2002 | $14,724 |
| 2003 | 18,992 |
| 2004 | 14,490 |
| 2005 | 14,791 |
| 2006 | 13,372 |
| 2007 | 16,518 |
| 2008 | 11,395 |

Petitioners reported wage and salary income as follows:

| Year | Wages |
|------|-------|
| 2002 | $113,468 |
| 2003 | 123,970 |
| 2004 | 140,773 |
| 2005 | 125,536 |
| 2006 | 141,453 |
| 2007 | 152,225 |
| 2008 | 127,138 |

Petitioners reported gross receipts, all of which were from

Mr. Sun's consulting activities, on Schedules C of their Federal

income tax returns as follows:

| Year | Gross Receipts |
|------|----------------|
| 2002 | -0- |
| 2003 | -0- |
| 2004 | -0- |
| 2005 | -0- |
| 2006 | $3,600 |
| 2007 | 2,400 |
| 2008 | 7,500 |

At the conclusion of trial, the Court remarked that on the

totality of the evidence and after observing Mr. Sun's demeanor

while he was testifying, the Court was satisfied that he had an

honest intent to earn a profit from his inventive activities. The Court found as a fact that during 2007 Mr. Sun engaged in his inventive activities primarily for profit.

## II.  Petitioners' Expenses

During 2007 petitioners deducted numerous expenses which allegedly related to Mr. Sun's inventive activities.  On Schedule C, petitioners made the following expense claims:

| Schedule C Expense | Amount |
| --- | --- |
| Automobile | $3,396 |
| Section 179 property | 323 |
| Legal & professional services | 4,075 |
| Office | 100 |
| Rent or lease of vehicles, machinery, & equipment | 60 |
| Supplies | 511 |
| Taxes & licenses | 150 |
| Travel | 7,208 |
| Meals & entertainment | 1,324 |
| Utilities | 1,367 |
| Other | 404 |

Petitioners attached a Form 8829, Expenses for Business Use of Your Home, to their 2007 Federal income tax return.  On Form 8829, petitioners claimed utility expenses of $552.  However, on line 35, "Allowable expenses for business use of your home", petitioners reported zero with respect to expenses for the business use of their home.

During 2007 Ms. Shen and Mr. Sun separately traveled to China.  Ms. Shen visited China from March 4 to March 29, 2007. Mr. Sun visited China from April 23 to May 23, 2007.  While in

China, Mr. Sun met with his partner and several contract manufacturers. He also visited friends and family members. The record does not reveal the business purpose for Ms. Shen's visit. Mr. Sun candidly admitted that Ms. Shen most likely visited friends and family members during her trip to China.[2]

Petitioners took a 7-day cruise to Hawaii in July 2007. The record does not reveal the business purpose for the cruise. Petitioners also twice traveled to Los Angeles and San Diego (southern California) in 2007. Again, the record does not reveal the business purpose of the trips. We note, however, that petitioners' daughter lived in San Diego.[3]

At trial respondent's counsel conceded that petitioners expended the dollar amounts claimed with respect to the deducted expenses. However, respondent's counsel stated that respondent did not concede that the amounts petitioners expended and deducted were for ordinary and necessary business expenses.

Respondent disallowed petitioners' expense deductions on two alternative theories. First, respondent avers that Mr. Sun was not engaged in a "for profit activity" with respect to his inventive work and therefore he could not deduct his expenses pursuant to the provisions of section 183(a). Alternatively,

_____

[2]Ms. Shen did not testify.

[3]In their posttrial brief petitioners concede the amount ($3,179.92) for their Hawaiian cruise and two trips to southern California is not deductible.

respondent maintains that petitioners failed to establish that the deducted expenses were "ordinary and necessary" business expenses within the purview of section 162(a).

On the basis of our finding that Mr. Sun was engaged in an activity for profit, see <u>supra</u> p. 7, the only basis on which respondent's deficiency determination can be sustained is that petitioners' expenses were not ordinary and necessary business expenses.

Discussion

I.  <u>Petitioners' Business Expense Deductions</u>

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business.  For an expense to be "ordinary" the transaction that gives rise to it must be of a common or frequent occurrence in the type of business involved.  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940).  To be "necessary" an expense must be "appropriate and helpful" to the taxpayer's business. <u>Welch v. Helvering</u>, 290 U.S. 111, 113-114 (1933).

It is well established that deductions are a matter of legislative grace and that taxpayers bear the burden of proving they are entitled to the deductions claimed.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). Taxpayers must substantiate the amount and purpose of the item

deducted.  Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Taxpayers are required to maintain records sufficient to enable the Commissioner to determine their correct tax liability.  See sec. 6001; Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

Automobile, travel, and meals and entertainment expenses are subject to heightened substantiation requirements.  See secs. 280F(d)(4)(A)(i), 274(d)(1) and (2).  Petitioners failed to meet these heightened substantiation requirements.  Further, we are unconvinced that the claimed automobile, travel, and meals and entertainment expenses constitute ordinary and necessary business expenses within the purview of section 162(a).  Indeed, Mr. Sun admitted that his and Ms. Shen's trips to China were for pleasure as well as business.  Petitioners failed to demonstrate that the primary purpose of their trips to China was to further Mr. Sun's inventive activities.  Further, they concede the amount for their Hawaiian cruise and two trips to southern California is not deductible.  See supra note 3.  Consequently, petitioners' expenses for travel to and from China, Hawaii, and southern California are not deductible.  See sec. 1.162-2(b)(1), Income Tax Regs.

Petitioners' legal fees relate to the engagement of the services of an attorney to obtain a patent in China.  We are

mindful that the Chinese patent was obtained in Mr. Sun's brother's name. Mr. Sun credibly testified as to the reason therefor; i.e., it was "much cheaper than for a foreigner" to do so. Recognizing that Chinese familial customs and business practices differ from those of the United States, we are satisfied that all of the benefits of the patent belong to Mr. Sun. Consequently, we hold that petitioners' $4,075 in legal and professional fee expenses constitute ordinary and necessary business expenses within the purview of section 162.

As to each of the other types of expenses deducted, petitioners provided no documentation or testimony which demonstrated that these expenses were ordinary and necessary business expenses. Under certain circumstances, if a taxpayer establishes entitlement to a deduction, but not the amount, the Court may estimate the amount allowable. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We generally will not estimate a deductible expense unless the taxpayer presents sufficient evidence to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Petitioners have not provided us any basis to estimate any allocation of expenses to business purposes.

To conclude this portion of our opinion, except for petitioners' legal and professional fee expenses of $4,075, we sustain respondent's disallowance of the business expense

deductions claimed on the basis that petitioners failed to carry their burden of proof.

II.  Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a 20-percent penalty on that portion of an underpayment of tax attributable to, inter alia, negligence or disregard of rules or regulations, as provided in section 6662(b)(1), or a substantial understatement of income tax, as provided in section 6662(b)(2).  Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c); ASAT, Inc. v. Commissioner, 108 T.C. 147, 175 (1997).  Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless or intentional disregard.  Sec. 6662(c).

The section 6662(a) accuracy-related penalty does not apply where the taxpayer shows that there was reasonable cause for the underpayment and that he acted in good faith.  Sec. 6664(c)(1).  Such a showing depends on the facts and circumstances of each case and includes the knowledge and experience of the taxpayer and the reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent has the burden of production pursuant to section 7491(c).  To satisfy that burden, respondent must produce

sufficient evidence showing that it is appropriate to impose the penalty. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446 (2001). On the record before us, respondent has satisfied his burden by producing evidence that petitioners were negligent in failing to keep books and records and in failing to substantiate their claimed deductions.

Petitioners have not demonstrated that there was reasonable cause for their underpayment of tax or that they acted in good faith. Although Mr. Sun sought advice regarding the technical aspects of establishing a business, the record does not reveal that he sought advice from a tax professional regarding the deductibility of his expenses.

To conclude this portion of our opinion, petitioners have failed to prove that they are not liable for the section 6662(a) penalty. Petitioners have neither argued nor offered evidence that an exception exists which would excuse them from the penalty. We therefore sustain respondent's determination that petitioners are liable for the section 6662(a) penalty. However, respondent must recompute the amount of the penalty to reflect the recalculation of petitioners' 2007 business expenses. This can be done in the Rule 155 computation.

We have considered all of petitioners' contentions, and we conclude they are without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.